UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TALAL S. HAMDAN M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:13-cv-195-WTL-MJD |
| | ) |
| INDIANA UNIVERSITY HEALTH | ) |
| NORTH, LLC, f/k/a CLARIAN HEALTH | ) |
| NORTH, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ENTRY ON DEFENDANTS' MOTION TO DISMISS

This cause is before the Court on the Defendants' motion to dismiss. Dkt. No. 19. The motion is fully briefed,[1] and the Court, being duly advised, rules as follows.

### I. STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and there is no need for detailed factual allegations. However, the statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

---

[1] The Plaintiff's motion for leave to file surreply is **GRANTED. Dkt. No. 36. The Clerk is directed to docket the Plaintiff's exhibit 1 to docket number 36 as the Plaintiff's surreply.** The Court has considered the Plaintiff's surreply in making its Entry.
   **In addition, the Defendants' motion to stay discovery is DENIED AS MOOT. Dkt. No. 42.**

## II.     BACKGROUND

The relevant facts as alleged in the Amended Complaint are as follow. The Plaintiff, Dr. Talal S. Hamdan, M.D., is a citizen of the United States who is of Palestinian descent. Dr. Hamdan, a medical doctor licensed in Indiana, is an interventional cardiologist who performs interventional endovascular procedures, commonly referred to as "limb salvage procedures," to treat patients who would otherwise be candidates for limb amputations.

On December 13, 2007, Dr. Hamdan applied for practice privileges and appointment to the medical staff at Indiana University Hospital North, Inc. and Clarian Health North, LLC, ("the Hospital"). Soon thereafter, the Hospital issued privileges to Dr. Hamdan to practice coronary, endovascular, and other interventional procedures and thereafter routinely renewed his privileges to perform these procedures.

When the Hospital issued practice privileges to Dr. Hamdan, both parties became subject to the Bylaws, Rules, Regulations, and Policies of the Medical Staff (the "Bylaws"), an agreement or contract under which each party assumed significant rights and obligations with respect to each other. The Hospital was also required to create policies and procedures consistent with the standards of the Joint Commission on Accreditation of Healthcare Organizations (the "TJC") and incorporate them into its Bylaws.

Beginning in the summer of 2009, Dr. Hamdan began performing coronary, endovascular, and other interventional procedures on a routine basis in the Hospital's catheterization laboratory (the "Cath Lab"). Shortly after Dr. Hamdan began working in the Cath Lab, several Hospital employees began making racial and ethnic slurs, comments, and innuendoes directed at Dr. Hamdan based on his Palestinian race, ethnicity, and descent.

Although Dr. Hamdan and others complained to the Hospital about the racial and ethnic animus, the Hospital failed to take ameliorative or corrective action to protect Dr. Hamdan. Instead, left unchecked, the hostility toward Dr. Hamdan increased.

Thereafter, beginning in October 2009 and continuing through March 2011 and beyond, Hospital employees made false reports about Dr. Hamdan to the medical staff office. Despite Dr. Hamdan's complaints to the Hospital, the Hospital failed to interview all persons with knowledge of the incident reports, violating the Hospital's Bylaws.

On March 5, 2010, two Cath Lab employees filed bogus charges of misconduct against Dr. Hamdan. The Hospital thus subjected Dr. Hamdan to a "Focused Professional Practice Evaluation" ("FPPE") as provided in the Hospital Bylaws. However, the FPPE the Hospital instituted did not adhere to the governing TJC standards or the Hospital Bylaws. In addition, the Hospital failed to take into account that the charges of misconduct had been filed by the two employees most active in creating a hostile work environment for Dr. Hamdan.

On April 14, 2011, the Hospital's Medical Executive Committee (the "MEC") issued a first Adverse Action against Dr. Hamdan based on several of the complaints and allegations. Around this time, an officer or employee of the Hospital or a member of the MEC informed Dr. Richard J. Kovacs, member and chairman of the Indiana University Independent Review Board ("IRB") and a member of the I.U. Health Cardiovascular Executive Committee, about the Adverse Action. Dr. Kovacs published the information to the IRB, although he did not know whether the allegations were true and had not investigated the charges.

On July 18, 2011, the MEC issued a second Adverse Action against Dr. Hamdan. Dr. Hamdan requested an appeals hearing with respect to both Adverse Action letters.

On September 28, 2011, the Hospital threatened Dr. Hamdan that if he did not agree to be reported to the National Practitioner Data Bank and resign his practice privileges while under investigation, the Hospital would pursue civil and criminal charges against him.

A Committee heard evidence on the Adverse Actions against Dr. Hamdan on February 21, 22, and 28, 2012. The Committee recommended against taking any disciplinary action and recommended that the investigation be closed. The Hospital's Board of Directors thereafter adopted the Committee's recommendations on August 21, 2012.

On February 4, 2013, Dr. Hamdan filed the instant action, alleging that the Hospital (1) violated 42 U.S.C. § 1981; (2) intentionally or recklessly inflicted severe emotional harm on Dr. Hamdan; and (3) defamed Dr. Hamdan. The Defendants have moved to dismiss Dr. Hamdan's § 1981 and defamation claims.

### III.   DISCUSSION

Section 1981 of Title 42 of the United States Code provides that "all persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." Liability under § 1981 is thus predicated on an existing or proposed contract. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006). Here, the Defendants contend that Dr. Hamdan cannot state a claim under § 1981 because, as a matter of law, there is no contract between the parties. In response, Dr. Hamdan contends that the Hospital Bylaws were a contract in and of themselves.[2]

Hospital bylaws may constitute a contract between the hospital and its staff. *W.S.K. v. M.H.S.B.*, 922 N.E.2d 671, 694 (Ind. Ct. App. 2010) (discussing *Terre Haute Reg'l Hosp., Inc. v.*

---

[2] Dr. Hamdan also suggests at one point that the Bylaws were "incorporated by reference into the Hamdan-Hospital contract," Hamdan Resp. at 9, Dkt. No. 24, but he does not thereafter develop this argument.

*El-Issa*, 470 N.E.2d 1371 (Ind. Ct. App. 1984)); *see also Pepple v. Parkview Mem. Hosp., Inc.*, 536 N.E.2d 274, 276 (Ind. 1989) (citing *El-Issa* with approval); *Lim v. Central DuPage Hosp.*, 871 F.2d 644, 647 (7th Cir. 1989) ("The bylaws set forth the terms of the contractual relationship between the physician and the hospital, and they create elaborate procedures for determining whether a member of the staff will be reappointed."). Whether the Hospital Bylaws in this case did so – particularly in light of language providing that the Bylaws are not a contract – is a question of fact that cannot be decided on a motion to dismiss. At this time, it is enough that Dr. Hamdan has sufficiently alleged a plausible contractual relationship.

The Defendants also contend that they are entitled to dismissal of Dr. Hamdan's defamation claim because they are immune under the Health Care Quality Improvement Act ("HCQIA"), Indiana's peer review statute, Indiana's immunity provision regarding the governing board of a hospital and the qualified workplace privilege. In his response, Dr. Hamdan clarifies the nature of his claim: "[C]omplaints made by hospital employees to the medical staff office and others, which initiated the professional review activity, form[ ] the basis of the defamatory action." Hamdan Resp. at 22, Dkt. No. 24. In addition, "these defamatory statements were republished to Dr. Richard Kovacs and the IRB." *Id.*

The HCQIA provides immunity from suit for providing information to a professional review body "unless such information is false and the person providing it knew that such information was false." 42 U.S.C. § 11111(a)(2).

In addition to the immunity provided under federal law, Indiana state law provides immunity to individuals involved in peer review proceedings:

> There is no liability on the part of, and no action of any nature shall arise against, the personnel of a peer review committee for any act, statement made in the confines of the committee, or proceeding of the committee made in good faith in

> regard to evaluation of patient care as that term is defined and limited in IC 34-6-2-44.

Ind. Code § 34-30-15-15.

> The governing board and the governing board's employees, agents, consultants, and attorneys have absolute immunity from civil liability for communications, discussions, actions taken, and reports made concerning disciplinary action or investigation taken or contemplated if the reports or actions are made in good faith and without malice.

Ind. Code § 16-21-2-6(b). Finally, Indiana recognizes a qualified workplace privilege:

> Qualified privilege is a defense to a defamation action and applies to "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty."

*Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992) (quoting *Chambers v. Am. Trans Air, Inc.* 577 N.E.2d 612, 615 (Ind. Ct. App. 1991)). The key qualifier in each of these provisions is scienter; the privilege does not extend to those persons with knowledge of falsity or malice and a lack of good faith. Here, Dr. Hamdan has alleged sufficient facts to render it plausible that his alleged tormenters had the requisite scienter. Accordingly, Dr. Hamdan's defamation claim is not subject to dismissal on this basis.

## IV.    CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss is **DENIED**.

SO ORDERED:      06/28/2013

 

                        Hon. William T. Lawrence, Judge
                        United States District Court
                        Southern District of Indiana

Copies to all counsel of record via electronic communication.