UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TALAL S. HAMDAN M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INDIANA UNIVERSITY HEALTH NORTH, | ) | |
| LLC formerly known as CLARIAN HEALTH | ) | |
| NORTH, LLC, | ) | No. 1:13-cv-00195-WTL-MJD |
| INDIANA UNIVERSITY HOSPITAL | ) | |
| NORTH, INC., | ) | |
| CLARIAN HEALTH NORTH, LLC doing | ) | |
| business as CLARIAN NORTH MEDICAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTION TO COMPEL

This matter is before the Court on Plaintiff Talal Hamdan, M.D.'s Motion to Compel

Production of Documents. [Dkt. 73.] For the reasons set forth below, the Court **GRANTS IN**

**PART** and **DENIES IN PART** Plaintiff's motion to compel.

### I. Background

On February 28, 2013, Plaintiff filed an amended complaint against Indiana University

Health North, Inc. and Clarian Health North, LLC ("Defendants" or "the Hospital"). [Dkt. 14.]

Defendants are entities that operate a hospital facility, called Clarian North Medical Center,

where Plaintiff had practice privileges as a physician and surgeon until he resigned. [*Id.*]

Plaintiff alleges that the Hospital participated in race and ethnicity-based discrimination under 42

U.S.C. § 1981 by entertaining charges of professional misconduct against Plaintiff that Hospital

1

knew to be false, subjecting Plaintiff to disciplinary action that harmed his reputation, and ultimately forcing Plaintiff to resign. [*Id.*]

During discovery, Plaintiff has requested email communications between and among certain supervisory and subordinate medical, nursing, and human resources ("HR") personnel at the Hospital. Specifically, there are three email chains in dispute. First, there is a chain of email correspondence dated October 9, 2011, between a supervising doctor and outside counsel discussing Defendants' potential responses to a proposal from Plaintiff. Defendants withheld this correspondence on the basis of attorney-client privilege. [Dkt. 78 at 1.] Second, there is a chain of email correspondence dated January 29-30, 2011 between several hospital employees, including doctors, nurses, HR officials, and the CEO, discussing Plaintiff's alleged misconduct. Certain emails within this chain of correspondence carbon copy ("CC") the Hospital's in-house counsel. Defendants redacted the emails that CC in-house counsel on the basis of attorney-client privilege. [*Id*. at 2.] Finally, there is a chain of email correspondence dated March 28-29, 2011, between the custodian of the Hospital's personnel records and the chief medical officer regarding Plaintiff's request to see his personnel record. Certain emails within this chain of correspondence CC in-house counsel. Defendants redacted the emails that CC in-house counsel on the basis of attorney-client privilege. [*Id*. at 3-4.] Defendants also claim work product protection for all three email chains. [*Id.* at 5.] Defendants provided copies of the withheld and redacted documents for *in camera* review and the motion was heard on November 25, 2013.

## II. Legal Standard

Two protections are at issue with respect to the discovery requested of the Hospital: the attorney-client privilege and the work product doctrine.

### A. Attorney-Client Privilege

The privilege of confidentiality afforded to communications between attorney and client is one of the oldest common law privileges, and is meant to encourage full and frank discussions that promote observance of the law and the administration of justice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). While there is no specific federal standard for attorney-client privilege, the Federal Rules of Evidence state that all privileges (except to the extent they pertain to claims or defenses governed by state law) are governed by "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501.

The Seventh Circuit has recently reiterated that in order for the common law attorney-client privilege to cover a communication, the court must determine (1) whether legal advice was sought from an attorney in his or her capacity as an attorney and (2) whether the communication was related to that purpose and made in confidence by the client. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009) (citing *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)). The party seeking protection from the privilege has the burden to establish all of the essential elements. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (citing *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)). The Supreme Court has noted that there is a stark difference between communications to attorneys and the underlying facts of the case; communications are privileged, but a client cannot conceal a fact merely by revealing it to his or her lawyer. *See Upjohn* 449 U.S. at 395-96. The Seventh Circuit has further held that the privilege "should be strictly confined within the narrowest possible limits." *Lawless*, 709 F.2d at 487 (internal quotations omitted). Strict limitations are necessary because the attorney-client

privilege has the effect of depriving the fact finder of relevant information. *Fisher v. United States*, 425 U.S. 391, 403 (1976).

## B. Work Product Doctrine

Unlike attorney-client privilege, there is a federal standard for the work product doctrine identified in Federal Rule of Civil Procedure 26, which is a codification of the doctrine first articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947).  Specifically, the work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  In determining whether the work product privilege applies, a court must examine whether the sought-after documents convey an attorney's thought processes and mental impressions. *Sandra*, 600 F.3d at 621-22.  The party seeking work product protection to prevent discovery bears the burden of proof to demonstrate that the disputed material was prepared in anticipation of litigation. *FDIC v. Fidelity and Deposit Co. of Md.*, No. 3:11-cv-19-RLY-WGH, 2013 WL 3989140, at *2 (S.D. Ind. Aug. 2, 2013).

The threshold determination for the application of work product privilege is whether the material sought to be protected from discovery was prepared or obtained *because* of the prospect of litigation. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996) (emphasis in original).  Said another way, "Documents that are created in the ordinary course of business, irrespective of litigation, are not protected by the work product doctrine." *United States v. Cinergy Corp.*, No. 1:99-cv-1693-LJM-JMS, 2008 WL 5424007, at *1 (S.D. Ind. Dec. 30, 2008) (citing *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)).  "The mere contingency that litigation may result is not determinative" as to whether the work product doctrine is applicable, nor does the mere contingency of litigation "qualify an in house report as

work product." *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983) (quoting *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982) (internal quotations omitted)).  The primary motivating purpose behind the creation of the document must be to aid in possible future litigation.  *Id.*  Documents that are not primarily legal in nature are not protected under the work product doctrine.  *See Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981) ("Only where the document is primarily concerned with legal assistance does it come within [attorney-client or work-product] privileges.").

### III. Discussion

Because the Defendants are claiming both attorney-client privilege and work product protection for all three chains of email correspondence, the Court will discuss each individually, following the same order outlined in Plaintiff's motion and Defendants' response.

**A. The October 9, 2011 Email Correspondence**

The first chain of email correspondence that was withheld from discovery by Defendants, dated October 9, 2011, begins with a proposal from Plaintiff's attorney sent to Defendants' outside counsel.  Outside counsel then forwards the proposal to representatives of the Hospital, including in-house counsel, and those parties discuss their potential options in response.  The nature of the correspondence makes it clear that legal advice was sought from the attorneys included in the chain of correspondence and the entire line of communications was related to that purpose and made in confidence by the client.  Based on its *in camera* review of the October 9, 2011 correspondence, the Court finds that the criteria outlined by the Seventh Circuit in *Sandra* have been met, and the correspondence is protected from discovery by attorney-client privilege. As such, the Court denies Plaintiff's motion to compel with regard to the October 9, 2011 correspondence.

Because attorney-client privilege applies, there is no need to discuss the work product doctrine with regard to the October 9, 2011 chain of email correspondence.

**B. The January 29-30, 2011 Email Correspondence**

The chain of email correspondence dated January 29-30, 2011 begins with a message discussing Plaintiff's behavior in the workplace sent to several Hospital officials from one of the Hospital's HR employees.  Responses ensue from various individuals, and new individuals are added by CC along the chain of emails.  The Defendants have already provided the Plaintiff with all of the email messages that do not CC an attorney in the January 29-30, 2011 chain of email correspondence.  There are four messages within the chain of correspondence that Defendants redacted because the messages CC in-house attorneys.  The Court has reviewed each of the four individual redacted emails from the chain of correspondence *in camera* and determined that the same analysis and conclusion applies to each of the four redacted emails.

First, the Court addresses attorney-client privilege.  The redacted emails are HR focused and document at-the-moment analysis of the Plaintiff's situation authored by Hospital employees such as the chief medical officer, chief nursing officer, and representatives from the department in which Plaintiff worked.  None of the redacted emails are sent directly to an attorney (attorneys are included via CC), nor are any of the redacted emails addressed to an attorney in the text of the messages.  There is no request for legal advice in any of the redacted emails, nor is there any indication in any of the emails that the author initiated or created the message for the purpose of seeking advice from the attorneys.  In fact, the only explicit mention of the attorneys by an author of a redacted email occurs when the chief medical officer indicates that the attorneys were copied so that one of them might attend a previously scheduled meeting.  Furthermore, the emails merely communicate facts about the situation surrounding Plaintiff's actions and others'

responses to his actions in the workplace.  As the Supreme Court explained in *Upjohn*, facts are

not privileged; simply communicating the underlying facts of the dispute to an attorney by

copying the attorney on an email does not transform the email into a privileged communication.

Thus, neither of the prongs set out by the Seventh Circuit in *Sandra* have been met: no legal

advice was sought by the emails, nor were they related to the purpose of seeking legal advice.

Defendants argue in their response that the redacted emails should be privileged because

the communications were made to the attorneys as part of an ongoing investigation of the

complaints against Plaintiff.  [Dkt. 78 at 2-3.]  Defendants state that the copied in-house

attorneys attend and participate in monthly performance committee meetings and they are "kept

informed" via CC on emails.  *Id.*  Defendants also seem to indicate that it is the Hospital staff,

and not the attorneys, who are performing the investigation in question.  *Id.* ("The Hospital is

communicating with its counsel, while performing an investigation of the complaints received

regarding Plaintiff, including discussions of the incidents at the monthly . . . meetings.").  To

support this argument, Defendants attempt to draw a parallel between the instant case and one in

which privilege was found to protect documents produced in an attorney's investigation.  *Malin

v. Hospira, Inc.,* No. 08 C 4393, 2010 WL 3781284, at *1 (S.D. Ill. Sept. 21, 2010) (citing

*Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 619 (7th Cir. 2010).

The Court agrees with Defendants that in certain circumstances communications made as

part of an attorney's investigation are privileged, but the instant case does not fit those

circumstances.  The Seventh Circuit in *Sandra*, relying heavily on the Supreme Court's decision

in *Upjohn*, held that when an attorney performs an investigation acting within his or her role as

an attorney (meaning that the investigation performed by the attorney is related to the rendition

of legal services) then statements made to the attorney as part of the investigation are subject to

attorney-client privilege. *Sandra*, 600 F.3d at 620. The fact patterns in *Upjohn*, *Sandra*, and *Malin* all fit the *Sandra* court's holding whereas the instant case does not. The Court will use *Malin* to demonstrate its point since it is the primary case relied upon by Defendants, although the Supreme Court and Seventh Circuit cases are similar.

In *Malin*, the attorney was actively conducting an investigation that was related to potential litigation by conducting interviews and taking notes based on those interviews. *Malin*, 2010 WL 3781284, at *1. Unlike the instant case, there were clear legal services being rendered through the attorney's investigation in *Malin* because it was performed with the expectation that the investigation would result in legal advice: namely, defense of an EEOC charge. *Id.* Importantly, it was the attorney who was conducting the investigation; it was not conducted autonomously by non-attorney employees. *Id.* Additionally, the investigating attorney in *Malin* was not simply a passive listener who was kept informed via regular updates from the individuals actually performing the investigation; the attorney directed and controlled the investigation. *Id.* The plaintiff tried to compel discovery of the attorney's notes taken during her active investigation into the facts and the *Malin* Court found that her notes were privileged. *Id.*

In the instant case, there is no evidence to demonstrate that the Hospital's in-house attorneys were performing an active investigation; instead, members of the Hospital staff were discussing Plaintiff's activities from an HR perspective via email and copying the attorneys on those emails. The Defendants claim that being copied on these emails constitutes an attorney's investigation that should be privileged because the copied attorneys participate in performance committee meetings. [Dkt. 78 at 3.] The Defendants presented limited evidence to demonstrate that there was an expectation that legal services would be rendered. Specifically, in the hearing on November 25, 2013, Defendants asserted that because certain emails in the chain of

correspondence do not CC in-house counsel, the lack of CC should be considered evidence that only the messages that actually do CC in-house counsel are made for the purpose of rendering legal advice.  However, the Court cannot assume that simply adding an attorney to an email via CC creates an expectation that legal services will be rendered.  In fact, as described above, the only explicitly stated reason the attorneys were copied was so that one of them might attend a previously scheduled meeting.  Simply copying attorneys on an email chain in order to keep them abreast of HR and other business-related occurrences does not transform the emails into an attorney's investigation with a built-in expectation of legal services to be rendered which would qualify for attorney-client privilege.

Accordingly, Defendants have failed to meet their burden of proof and the attorney-client privilege does not apply to the chain of email correspondence dated January 29-30, 2011.  The Court now turns to the matter of work product doctrine.

Defendants argue that the work product doctrine applies to the January 29-30, 2011 chain of emails because Federal Courts have recognized that for the purpose of Federal Rule of Civil Procedure 26, "litigation has been understood to include proceedings before administrative tribunals if they are adversarial in nature."  [Dkt. 78 at 5 (quoting *Evergreen Trading, LLC. v. United States*, 80 Fed. Cl. 122, 132 (2007).]  Defendants argue the chain of emails was prepared in anticipation of an internal peer review where Plaintiff would be held accountable to Hospital officials for his actions, and the peer review should be considered an administrative tribunal akin to litigation in line with this precedent.  [*Id.* at 5-6.]  While the Court agrees that there are circumstances where work product protection would apply to items prepared in anticipation of an administrative tribunal, the instant case does not qualify for such protection.

In order to walk through the door of work product protection, the correspondence in question must first be the *attorney's* work product.  This concept goes back to the first articulation of the work product doctrine by the Supreme Court in *Hickman*, when it stated, "it is essential that a lawyer work with a certain degree of privacy" because compelling disclosure of the attorney's thoughts would render them "inviolate" and result in them being "not . . . his own."  329 U.S. at 510-11.  The redacted emails are HR focused and document at-the-moment analysis of the Plaintiff's situation authored by Hospital employees such as the chief medical officer, chief nursing officer, and representatives from the department in which Plaintiff worked.  None of the emails represent work performed *by the attorneys* or *at the direction of the attorneys*.

Instead, the attorneys are simply included on correspondence that was business-related and would have occurred regardless of the attorney's inclusion by CC.  This is demonstrated by the authors addressing one another (not the attorneys) and discussing the HR implications of the situation with one another throughout the chain of emails rather than engaging in a discussion with the attorneys about the forthcoming tribunal referred to in Defendants' response brief.  [Dkt. 78 at 5.]  In fact, within the emails themselves there is not a single mention of a forthcoming tribunal, and certainly no discussion between the attorneys and Hospital officials that would give Plaintiff undue access to attorney mental impressions or thought processes in anticipation of the tribunal that would be protected as work product.  Simply copying attorneys on an email chain in order to keep them abreast of HR and other business-related occurrences does not transform the emails into the mental impressions and thought processes of the attorneys and qualify them for work product protection.

Based on its *in camera* review of the chain of emails, the Court finds that there is no *attorney* work-product to be protected.  The emails are between non-attorney employees, discussing non-legal matters, and none of the emails represent work performed by or at the direction of attorneys.  For the forgoing reasons, Defendants have failed to meet their burden of proof and the work product doctrine does not apply to the chain of email correspondence dated January 29-30, 2011.

Because neither attorney-client privilege nor work product doctrine applies, the Court grants Plaintiff's motion to compel with regard to the January 29-30, 2011 correspondence.

**C. The March 28-29, 2011 Email Correspondence**

The final chain of email correspondence that contains messages redacted by Defendants, dated March 28-29, 2011, begins with the Hospital's custodian of personnel records asking the chief medical officer how to proceed when the Plaintiff requested his file.  The chief medical officer defers to in-house counsel and explicitly asks in-house counsel for advice.  The emails that follow clarify the issue and further ask for explicit instructions from the attorney, who responds with her advice.  The nature of the correspondence makes it clear that legal advice was sought from the attorney included in the chain of correspondence and the entire line of communications was related to that purpose and made in confidence by the client.  Based on its *in camera* review of the March 28-29, 2011 correspondence, the Court finds that the criteria outlined by the Seventh Circuit in *Sandra* have been met, and the correspondence is protected from discovery by attorney-client privilege.  As such, the Court denies Plaintiff's motion to compel with regard to the March 28-29, 2011 correspondence.

Because attorney-client privilege applies, there is no need to discuss the work product doctrine with regards to the March 28-29, 2011 chain of email correspondence.

11

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion to Compel Production of Documents

[Dkt. 73] is **DENIED** with respect to the October 9, 2011 chain of email correspondence and the

March 28-29, 2011 chain of email correspondence and **GRANTED** with respect to the January

29-30, 2011 chain of email correspondence.[1]


Date:   06/24/2014

_Mark J. Dinsmore_
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Robert E. Saint
EMSWILLER WILLIAMS NOLAND & CLARKE
rsaint@ewnc-law.com

Cassandra A. Kruse
EMSWILLER WILLIAMS NOLAND & CLARKE, P.C.
ckruse@ewnc-law.com

Stephanie Lynn Cassman
LEWIS WAGNER LLP
scassman@lewiswagner.com

Theresa Renee Parish
LEWIS WAGNER LLP
tparish@lewiswagner.com

W. William Hodes
THE WILLIAM HODES LAW FIRM
wwh@hodeslaw.com

---

[1] The Court notes that within his Motion to Compel, Plaintiff argued that Defendants did not claim work product protection over the disputed emails in a timely manner.  [Dkt 74 at 7.]  Because the Court finds that with respect to two disputed chains of emails the attorney-client privilege applies, and with respect to the third disputed chain of emails the Defendants fail to carry their burden of proof for the work product doctrine to apply, the timeliness of asserting the work product doctrine is irrelevant.  As such, the Court declines to comment further on Defendants timeliness in asserting work product protection.