**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| TALAL S. HAMDAN, M.D., | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     vs. | ) CAUSE NO. 1:13-cv-195-WTL-MJD |
| | ) |
| INDIANA UNIVERSITY HEALTH | ) |
| NORTH HOSPITAL, INC., | ) |
| | ) |
|   Defendant. | ) |

## ENTRY ON MOTIONS IN LIMINE

This cause is before the Court on the parties' motions in limine. The motions are fully briefed and the Court, being duly advised, resolves them as set forth below.

The Court notes that the granting of a motion in limine is not a final ruling regarding the admissibility of the evidence at issue. Rather, it simply prohibits any party from eliciting testimony regarding or otherwise mentioning a particular issue during trial without first seeking leave of Court outside of the presence of the jury. Therefore, a party who wishes to elicit testimony or introduce evidence regarding a topic covered by a motion in limine that has been granted should request a sidebar conference during the appropriate point in the trial, at which time the Court will determine how best to proceed. Parties should always err on the side of caution and interpret rulings on motions in limine broadly, requesting sidebars before eliciting testimony or offering evidence that is even arguably covered by a ruling in limine and avoiding mention of such topics during voir dire, opening statements and closing argument. Counsel shall also carefully instruct each witness regarding subjects that should not be mentioned or alluded to during testimony unless and until a finding of admissibility is made by the Court.

**Plaintiff's Motions in Limine**

1. **Plaintiff's Religion (Dkt. No. 196)**

Dr. Hamdan "requests the Court to enter an Order barring discussion or cross-examination by the Hospital's counsel or testimony by its witnesses about [his] Muslim faith or religion, or that he or his parents or family are practicing Muslims." Dkt. No. 196 at 1.  He argues that "religion [is] not at issue in this case" and there exists a "danger of hard-to-detect prejudice against Muslims that might exist in the jury pool." *Id*. at 1-2.  This motion is **DENIED**.

It is true that § 1981 does not encompass discrimination based on religion; however, this does not mean that Dr. Hamdan's religion is irrelevant to the case.  The allegedly-discriminatory comments made by the Cath Lab employees include a mix of racial and religious comments, e.g., "Middle Eastern Muslims."  As the Hospital notes, "[t]he jury must be allowed to consider all of the evidence and alternatives in order to put the whole story together as to what was happening in the Cath Lab[.]" Dkt. No. 212 at 4.

The Court also notes that Dr. Hamdan will have ample opportunity during voir dire to question potential jurors about their potential bias towards his religion.

2. **Contractual Relationship (Dkt. No. 197)**

Dr. Hamdan "requests the Court to enter an Order barring discussion or cross-examination by counsel or testimony by witnesses suggesting, implying, or tending to create an inference that there was *not* a contractual relationship between Dr. Hamdan and the Hospital, as that term is used in 42 U.S.C. §1981, as amended." Dkt. No. 197 at 1.  The Hospital "has no objection to Hamdan's Second Motion in Limine so long as the Hospital's right to appeal the Court's Entry on Cross Motions for Summary Judgment is preserved." Dkt. No. 213 at 1.  Accordingly, this motion is **GRANTED**.

3. **Information not Previously Considered or Relied Upon (Dkt. No. 198)**

Dr. Hamdan seeks to exclude any discussion, cross-examination, or testimony "about any conduct or action (including inaction) of Dr. Hamdan, whether behavioral or clinical, unless the conduct or action (including inaction) had been considered or relied upon by the PA&I Committee or the MEC in issuing the two Adverse Action Letters, and made known to Dr. Hamdan." Dkt. No. 198 at 1. He argues that "evidence or remark[s] outside the peer review process and not considered during the peer review process cannot be relevant to any element of Dr. Hamdan's civil rights claim." *Id*. at 2.

It appears to the Court that the Hospital may use this evidence for impeachment purposes. It notes that Dr. Hamdan's experts will testify "as to his purported glowing professional reputation" that has been tarnished as a result of the peer review process. Dr. Hamdan has likened this to a "black mark" on his record. The Court agrees with the Hospital that

> [i]f Hamdan continues to assert at trial that the Hospital's confidential peer review process left a permanent "black mark" which damaged his reputation and diminished his future earning capacity, the Hospital is certainly permitted to admit evidence of other potential causes of damage to Hamdan's reputation, including evidence of problems he had at other institutions before and after the Hospital's peer review.

Dkt. No. 211 at 2. Accordingly, this motion is **DENIED**.

4. **Earlier Lawsuit against Cath Lab Personnel (Dkt. No. 199)**

Hamdan seeks to exclude evidence that he filed a lawsuit against the Cath Lab employees in August 2011; he later voluntarily dismissed this lawsuit. He argues that this evidence is irrelevant and would unfairly portray him "as a litigious fellow[.]" Dkt. No. 199 at 2. The Hospital has no objection to this motion so long as its motion in limine "seeking to preclude admission of the Hearing Transcript and DC Findings is granted[.]" Dkt. No. 214 at 3.

The Court disagrees that this evidence unfairly portrays him as a litigious fellow; indeed the Hospital notes that it "has never alleged or argued that Hamdan has a litigious character and would not make such a suggestion if the Cath Lab Complaint is admitted into evidence." *Id*. at 2. That said, the Court is still unclear as to how this evidence is relevant. In light of the Court's ruling below regarding the Designated Committee Report and Recommendation, if the Hospital seeks to admit evidence of the lawsuit Dr. Hamdan filed against the Cath Lab employees at trial, it should request a sidebar conference before doing so to discuss the relevancy with the Court.

5. **Palestinian versus Middle-Eastern Descent (Dkt. No. 200)**

Dr. Hamdan seeks to exclude any discussion, cross-examination, or testimony "about the fact that [he] is Palestinian (as opposed to Middle-Eastern descent), or that his parents have returned to Palestine to live, or that Dr. Hamdan has from time-to-time visited his parents there." Dkt. No. 200 at 1. He argues that "his connection to the region in the Middle-East commonly referred to as 'Palestine,' as opposed to some other country or region in the Middle-East, is not a central or even relevant fact" and that "the terms 'Palestine' or 'Palestinian' have acquired a secondary and opprobrious meaning in the United States in recent years." *Id*. This motion is **DENIED**.

Clearly, the fact that Dr. Hamdan is of Palestinian descent and ethnicity is relevant to his § 1981 claim. Moreover, he will have ample opportunity during voir dire to question potential jurors about their potential bias towards his Palestinian descent and ethnicity.

6. **Unsupported Expert Opinions (Dkt. No. 201)**

Dr. Hamdan seeks to prohibit the Hospital's expert, Dr. Skoog, from "parroting" the affidavit of Dr. King. While the Court previously ruled on Dr. Hamdan's *Daubert* motion regarding both Drs. Skoog and King (Dkt. No. 172), Dr. Hamdan argues that a new problem

4

presented itself when the Hospital failed to designate Dr. King as a testifying witness. Specifically, Dr. Hamdan argues that

> [i]f Dr. Skoog is permitted to rely on Dr. King's affidavit, [] the jury will not have heard any foundational testimony from Dr. King, and Dr. King will not have been subjected to cross-examination. Thus, the jury will have no way of learning or making a judgment about whether Skoog's reliance on King was sound.

Dkt. No. 201 at 2, n. 1.

Dr. King is an interventional cardiologist with forty-five years of experience. Dkt. No. 145-5, King Aff. ¶ 7. He notes that he has "extensive knowledge regarding the level of experience necessary to build a reputation in the industry and the financial opportunities available to interventional cardiologists." *Id*. Essentially, Dr. King rebuts the opinions of Dr. Hamdan's experts, Drs. Walker and Weinstock, opining that their projections of Dr. Hamdan's earning capacity—both in his clinical practice and through supplemental income—are "grossly inflated," "completely unsupported," and "grossly exaggerated." *Id*. ¶¶ 14, 17.

The Seventh Circuit has noted that "[a] scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002). The Court agrees, therefore, with Dr. Hamdan that "to allow [Dr. Skoog] to 'parrot' the opinion of another expert in a different field . . . is improper." Dkt. No. 201 at 4. In other words, Dr. Skoog will not be allowed to vouch for Dr. King's opinions at trial; if the Hospital desired Dr. King's opinions to be admissible, it should have designated him as an expert and listed him on its witness list.

However, as Dr. Hamdan noted, Dr. Skoog "should be permitted to testify to the extent that his opinions are based on published statistics and such other information as he was able to glean through his own efforts." *Id*. Indeed, as the Hospital noted during the final pretrial

5

conference, Dr. Skoog came to certain conclusions based on his reliance on data *other* than Dr. King's affidavit. This testimony will not be precluded.

**7. Findings and Proceedings of Designated Committee (Dkt. No. 202)**

Dr. Hamdan's final motion in limine "requests the Court to enter an Order permitting plaintiff to introduce on his case-in-chief any and all documents or other evidence emanating from the proceedings of the Designated Committee"[1] and requests that this Court preclude the Hospital "from arguing or introducing evidence to get out from under the Designated Committee's findings that there was never any evidence of poor clinical performance by Dr. Hamdan[.]." Dkt. No. 202 at 1, 5.

The Court disagrees with Dr. Hamdan that issue preclusion or "converse collateral estoppel" applies in this case. "Issue preclusion, also known as collateral estoppel, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Coleman v. Donahoe*, 667 F.3d 835, 853 (7th Cir. 2012) (internal quotation marks omitted). The Court does not believe that the Designated Committee "actually litigated" the issue of Dr. Hamdan's clinical performance or made a "valid court determination" on the issue. Dr. Hamdan has directed the Court to no case law—in this context—to suggest otherwise.

That said, the Court believes the Report and Recommendation, with certain redactions, is proper evidence. Dr. Hamdan argues that it is admissible under Federal Rule of Evidence 801(d)(2)(B),[2] and the Hospital does not argue otherwise. The Hospital's main argument is

---

[1] The Hospital's fourth motion in limine essentially requests the opposite—that the transcript, record, and Report and Recommendation of the Designated Committee not be admitted into evidence.

[2] Rule 801(d)(2)(B) provides that a statement "offered against an opposing party [which] . . . is one the party manifested that it adopted or believed to be true" is not hearsay.

6

premised on Rule 403,[3] arguing that the admission of the Report and Recommendation would be unfairly prejudicial. *See* Dkt. No. 217 at 2 ("[T]he danger of the jury simply adopting the Designated Committee's [Report and Recommendation] is real. The Hospital has a right for the jury to hear live witness testimony and evaluate each witness' credibility[.]").

To begin, the Court notes that at the final pretrial conference, Dr. Hamdan agreed to redact the portions of the Report and Recommendation regarding his behavior, as these particular sections contain comments on witness credibility and fault.[4] The Court finds that this is proper and remedies much of the Hospital's concern. That said, with regard to the findings regarding Dr. Hamdan's clinical skills, the Court fails to see how the Hospital is unfairly prejudiced by their admission. The Designated Committee was tasked with determining the propriety of the "requirements imposed and actions taken by the IU Health North Medical Executive Committee pertaining to Dr. Hamdan's medical practice at IU Health North Hospital." Dkt. No. 112-2, Report and Recommendation of the Designated Committee, ¶ 4. It was not tasked with determining whether the Cath Lab employees displayed racial animus towards Dr. Hamdan, if the Cath Lab employees' complaints were "bogus" or racially motivated, or if the Hospital was "duped" by the Cath Lab employees. These are all issues the jury will still have to decide, regardless of the Report and Recommendation's admission.[5]

---

[3] Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

[4] The Court believes that redacting paragraphs 7 and 8 would be sufficient; however, the parties should confer with each other and come to an agreement, seeking Court guidance if necessary. This should be done prior to trial.

[5] At the final pretrial conference, the Hospital argued that admitting the findings regarding Dr. Hamdan's clinical skills necessitates a finding that the Cath Lab employees' complaints were false. The Court disagrees. It is entirely possible that the Cath Lab employees honestly believed there was an issue with Dr. Hamdan's clinical skills and that he was a risk to patients. More to the point, however, is that admitting the findings regarding Dr. Hamdan's clinical skills does not

7

The Hospital had every incentive to present documentary evidence and witnesses regarding its concerns with Dr. Hamdan's clinical skills at the Designated Committee hearing. Moreover, if it felt that Dr. Hamdan was a threat to patient safety or a danger to the Hospital, it did not have to adopt the Designated Committee's Report and Recommendation. However, it did, and the Court finds no unfair prejudice in the admission of a redacted form of the Report and Recommendation.

The transcript of the Designated Committee hearing, however, is not admissible as evidence. The transcript is close to 1,000 pages in length and contains a plethora of irrelevant information and hearsay. Moreover, as the Hospital notes, the hearing was not conducted pursuant to the Federal Rules of Evidence.[6] Accordingly, the transcript is excluded pursuant to Rule 403.

### Defendant's Motions in Limine (Dkt. No. 193)

**1. Law of the Case and Judicial Admissions**

The Hospital "requests that all issues that have become law of the case through this Court's Orders or have been judicially admitted by Hamdan during his briefing be settled *in limine* prior to trial." Dkt. No. 194 at 2. In this regard, the Hospital notes that "the following issues have been determined as law of the case or by Hamdan's judicial admissions[.]" *Id*. at 3.

### i. **Argument or Evidence of Indirect Discrimination**

The Hospital argues that "Hamdan should be precluded from offering evidence of indirect discrimination by the Hospital" because in his summary judgment briefing he

---

necessitate a finding that the Cath Lab employees' complaints were racially motivated. At trial, the jury will have the opportunity to listen to the testimony of the Cath Lab employees and judge their motivations behind the complaints. The admission of portions of the Report and Recommendation does not preclude this.

[6] Of course, if it is warranted at trial, the transcript may be used for impeachment purposes.

8

"designated no indirect evidence of discrimination, nor did he argue that he could prove discrimination using the indirect method of proof." *Id*.  Dr. Hamdan does not object to this, noting that "[h]e will rely only on the Cat's paw theory—which is a subspecies of the direct method of proof—to prove liability under § 1981." Dkt. No. 208 at 3.

The Court does note, however, that now that this matter has reached trial, there are no "methods," whether direct or indirect, there is only evidence. *See, e.g.*, *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994) (noting that once a discrimination case reaches trial, "the only remaining question—the *only* question the jury need answer—is whether the plaintiff is a victim of intentional discrimination").  The parties therefore need not concern themselves going forward with discussions of or objections based on the direct or indirect methods of proof—the ultimate question for the jury to decide is whether Dr. Hamdan was discriminated against.

### ii.    Discriminatory Animus By Anyone Other Than Cath Lab Employees

The Hospital also argues that "[g]iven [Dr. Hamdan's] admissions and elected Cat's Paw theory of liability, [he] should be precluded from now arguing or suggesting that the Hospital's peer review committees or anyone other than some members of the Cath Lab acted with discriminatory animus against him." Dkt. No. 194 at 5.  To the extent this is referring to members of the PA&I Committee and MEC, Dr. Hamdan does not object and agrees that he "should not be heard to argue otherwise at trial." Dkt. No. 208 at 4.  He does, however, suggest that "[e]vidence that others, outside the Cath Lab, also displayed racial animus toward him should be admissible if, but only if, racial animus was a proximate cause of the Adverse Actions later issued by the MEC." *Id*. at 5.  The Court is unaware of such evidence given Dr. Hamdan's consistent position that it was certain *Cath Lab employees* who displayed racial animus toward him and "duped" the Hospital from issuing the Notice of Medical Executive Committee Action

9

letters. If Dr. Hamdan believes he has evidence of this sort, he should request a sidebar conference before eliciting it at trial.

### 4. Events Occurring After July 18, 2011, Letter

This motion seeks to preclude the admission of the testimony and transcripts before the Designated Committee and the Report and Recommendation issued by the Designated Committee. The Court has resolved those issues above.

### 5. Evidence of Reputational Harm

The Hospital argues that Dr. "Hamdan should also be precluded from introducing evidence or argument that the Hospital cause him reputational harm as a result of the alleged discrimination." Dkt. No. 194 at 9. This motion is **DENIED**. As the Court has previously noted, "Dr. Hamdan is free to assert at trial that he has incurred career-long reputational damages due to the 'black mark' left by the choice of the Hospital to submit him to peer review and issue two adverse actions against him." Dkt. No. 172 at 8. In other words, Dr. Hamdan is free to argue that the discrimination he faced proximately caused him reputational damages.

### 6. Evidence Of Lost Earnings And Damages After Voluntary Relinquishment of Privileges From Indiana Hospitals

The Hospital argues that Dr. "Hamdan should be precluded from offering evidence or expert testimony concerning lost earnings or damages he incurred after he voluntarily relinquished his privileges at all Indiana hospitals, including the Hospital." Dkt. No. 194 at 10. This motion is also **DENIED**. Again, as the Court previously noted, "Dr. Hamdan may, if he believes the evidence warrants it, assert at trial that he was constructively discharged from Heart Partners and therefore he is entitled to recover the expenses associated with his relocation to Florida. It will then be up to the jury to determine what the circumstances of his relocation were and whether the requirements of constructive discharge are satisfied." Dkt. No. 172 at 6.

After hearing from the parties at the final pretrial conference, however, the Court believes it is best to address this issue with the jury as one of proximate cause rather than constructive discharge. Heart Partners, Dr. Hamdan's former employer, is not a defendant in this case and, therefore, there is no constructive discharge claim. As the Hospital notes, this issue is only relevant to Dr. Hamdan's damages, i.e., whether he can recover certain relocation expenses and whether he can recover (or must offset) the difference between his Florida and Indiana salaries. If the jury finds for Dr. Hamdan and addresses the issue of damages, it will simply be asked whether these damages were proximately caused by the Hospital's actions, not whether Dr. Hamdan was "constructively discharged" from Heart Partners.

**7. Settlement Negotiations During The Peer Review Process**

The Hospital seeks to exclude any "evidence that during efforts to compromise and resolve the difference between the Hospital and Hamdan in September of 2011 concerning the issuance of the letters forming the basis of his discrimination action, Hospital attorneys allegedly made 'threats' to Hamdan's counsel." Dkt. No. 194 at 12. Dr. Hamdan believes these negotiations are relevant to the issue of punitive damages.

While the Court agrees with Dr. Hamdan that Rule 408[7] does not apply to these negotiations, the Court finds that this evidence is irrelevant, even as to the issue of punitive

---

[7] Rule 408 provides the following:

(a) Prohibited Uses. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

    (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and

    (2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim

11

damages. As discussed below, Dr. Hamdan argues that his claim for punitive damages is premised on the Hospital's "reckless and callous disregard of abundant warning signs that the complaints it was rushing to judgment on were the product of racial animus." Dkt. No. 208 at 10. If that is the case, then any "threats" the Hospital may have made are irrelevant to the issue of punitive damages, as "threatening" someone is completely different than recklessly or callously disregarding the truth of a complaint.

If Dr. Hamdan believes this evidence is otherwise relevant for some other purpose, he should request a sidebar conference to discuss that with the Court before eliciting any such testimony regarding the alleged "threats."

### 8. Stipulation Regarding Hospital Charges and Collection for Hamdan's Patients

The Hospital seeks to preclude Dr. Hamdan from introducing "evidence pursuant to a Stipulation executed by the parties concerning the amount of hospital charges to the patients and their insurers associated with procedures performed by Hamdan." Dkt. No. 194 at 13. Dr. Hamdan seems to agree that this evidence need not be admitted if the contractual relationship between him and the Hospital is not disputed at trial. He does indicate, however, that this evidence may be relevant "for a different purpose." Dkt. No. 208. While the Court is unaware of what other relevance this evidence may have, if Dr. Hamdan wishes to introduce such evidence, he should request a sidebar conference before so doing.

### 9. Evidence of Front Pay And Other Damages Impacted By Resignation from Heart Partners

Dr. Hamdan does not intend to argue that he is entitled to front or back pay. *See* Dkt. No. 208 at 9. Accordingly, this motion is **GRANTED**.

---

by a public office in the exercise of its regulatory, investigative, or enforcement authority.

### 10. Punitive Damages

The Hospital argues that because Dr. Hamdan has argued a Cat's Paw theory of liability, he "should be barred from introducing any argument or evidence in support of a punitive damages claim in this case." Dkt. No. 194 at 17. The Hospital notes that punitive damages are available if a defendant acts with malice or with reckless indifference to the federally protected rights of a plaintiff. The Hospital argues that because Dr. Hamdan's case is premised on the Hospital being "duped" by the Cath Lab employees, "there can be no evil motive, subjective consciousness or criminal indifference on the part of the Hospital justifying Hamdan's entitlement to punitive damages." *Id*. at 16.

As noted above, however, Dr. Hamdan argues that his claim for punitive damages is premised on the Hospital's "reckless and callous disregard of abundant warning signs that the complaints it was rushing to judgment on were the product of racial animus." Dkt. No. 208 at 10. If the Hospital believes Dr. Hamdan has failed to submit enough evidence on the issue of punitive damages, it can make an appropriate motion at the end of his case. At this point in time, however, the Hospital's motion in limine is **DENIED**.

### 11. Non-disclosed expert opinions and testimony

The Hospital seeks to preclude Dr. Hamdan from presenting any non-disclosed expert opinions and testimony, noting that he has "identified himself and several other doctors as lay witnesses on his Final Witness List." Dkt. No. 194 at 17. Clearly, the Court will not allow Dr. Hamdan or the Hospital to elicit expert testimony from a non-disclosed expert; the expert witness deadline has long passed. That said, if the Hospital believes that Dr. Hamdan, or any other medical doctor identified as a witness, is asked to offer expert testimony, it can make an appropriate objection at that time.

**12. Any evidence of other discrimination actions or claims not involving Hamdan**

*and*

**13. Evidence concerning the Hospital's size, profitability, comparative wealth, or availability of insurance**

*and*

**14. The Filing of the Parties Motions *in Limine*, Motions to Exclude, Any Pre-Trial Discovery Disputes and/or Motions**

Dr. Hamdan does not object to these motions in limine. Accordingly, they are all

**GRANTED**.

SO ORDERED: 6/11/15

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification